UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION


NORMA PHILLIPS                                           PLAINTIFF

VS.                          CIVIL ACTION NO. 3:22-CV-223-TSL-LGI

JACKSON PUBLIC SCHOOL DISTRICT                           DEFENDANT


MEMORANDUM OPINION AND ORDER

This cause is before the court on the motion of defendant Jackson Public School District (JPS) for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. Plaintiff Norma Phillips has responded to the motion, and the court, having considered the memoranda of authorities, together with attachments, submitted by the parties, concludes that the motion should be granted in part and denied in part, as explained more fully herein.

Following her termination from her employment as a teacher with JPS, plaintiff filed the present action asserting federal claims of discrimination, failure to accommodate and retaliation in violation of the Americans With Disabilities Act (ADA), 42 U.S.C. § 12101, et seq., and Rehabilitation Act, 29 U.S.C. § 791 et seq., and for interference and retaliation in violation of the Family Medical Leave Act (FMLA), 29 U.S.C. § 2601 et seq. She

1

also has asserted state law claims for breach of contract and review of her termination by JPS.  Because it is at the center of the parties' dispute in this case, the court, before addressing the events that led to the present litigation, sets out the pertinent portion of JPS's policy on absences, known as GADE, which is as follows:

> Should an employee's absence extend for four or more consecutive days, the employee must submit, on or before the fifth day, a statement to the employee's immediate supervisor from a licensed medical doctor or dentist. The statement must include the expected length of absence. The original letter from the doctor must be filed with the immediate supervisor. …  The statement must include the expected length of absence.  If a sick leave extends beyond four (4) consecutive days the employee shall be forwarded Family Medical Leave Act forms to complete. …
>
> Should an employee be absent from duty and fail to comply with regulations covering the use of sick days, such employee shall be charged with the unauthorized absence that may lead to termination.

<u>Facts/Allegations</u>

Plaintiff became employed by JPS as an elementary teacher in 2011.  During the 2021-2022 school year, she was assigned to Smith Elementary School as one of three fifth-grade teachers; she taught science.  Plaintiff alleges that on Friday, January 28, 2022, while in the classroom, she was struck on the back of her head by a student; she reacted by pushing the student.  The following

Monday, January 31, plaintiff called in and e-mailed Principal Stephanie Wilson and Wilson's administrative assistant, Trenice Burse, to advise that she was going to the doctor to get checked out and would not be at work that day.  Plaintiff was seen later that day at Trustcare by a nurse practitioner, Joseph Tackett, complaining of muscle aches, neck pain and headaches.[1]  Plaintiff was released to return to work on light duty, with a lifting restriction.  A follow-up appointment was set for February 6.

The following day, Tuesday, February 1, plaintiff returned to work.  Toward the end of the day, plaintiff was asked to report to the central office to meet with JPS Assistant Superintendent Dr. Kathleen Grigsby and Larissa Moore, Director of Risk Management/General Counsel, about the incident with the student who allegedly struck her.  Following the meeting, plaintiff was suspended for five days, without pay, commencing February 2, for having violated the District's Code of Ethics by pushing the student.

On Sunday, February 6, plaintiff returned to Trustcare for her follow-up appointment.  Medical records reflect that her

---

[1]   At her initial appointment at Trustcare, plaintiff reported that she had a single episode of "mild dizziness" on Saturday morning that lasted only a few minutes; she reported having "no dizziness" since then.

physical exam was normal, and plaintiff "denie[d] any headaches or dizziness since [her] last visit other than today when she was taking out the trash[;] [she] state[d] for about 30 minutes she had a dizzy-like feeling describing it as a 'euphoric' feeling rather than dizziness.  [She] denie[d] blurred vision, dizziness or headache during the euphoria feeling [and] state[d] it resolved once sitting down."  Plaintiff was again given a release to return to light-duty work; a follow-up appointment was scheduled for February 10.

On the morning of Wednesday, February 9, the day plaintiff was scheduled to return to work following her suspension, plaintiff woke up experiencing intense dizziness.  She called and e-mailed the school, stating, "I am out sick today.  I am unable to come today."  Plaintiff has testified that later that morning, when the dizziness did not subside, she went to the emergency department at Baptist Medical Center.[2]  A CT was taken which ruled

---

[2]     While plaintiff alleges and testified that she went to the Baptist emergency department on February 9 because of an extended episode of intense dizziness, Baptist records recite that plaintiff "denie[d] dizziness" to the triage nurse and also to the examining physician; her only complaint, according to Baptist records, was neck pain and stiffness.  The court, for purposes of the motion, accepts plaintiff's testimony as true.

out concussion and ultimately, plaintiff left with a muscle relaxer but no diagnosis.

On February 10, plaintiff e-mailed the school, stating, "I am out sick today." Plaintiff returned to Trustcare later that day for a follow-up appointment. Although she does not recall feeling dizzy that day, she informed NP Tackett of her visit to Baptist for dizziness. Tackett suggested that plaintiff see her primary care doctor for referral to a neurologist, and he gave her a release to return to work with a restriction that read, "If dizziness returns and/or persists, avoid driving or returning to work for risk of falling or [motor vehicle accident]."[3]

Plaintiff called in and e-mailed JPS the following day, Friday, February 11, stating she would be "out sick today." On Monday, February 14, she e-mailed the school a copy of the February 10 Trustcare release to return to work with the referenced note regarding dizziness, and she reported that she

---

[3]   Notes from this Trustcare visit reflect that plaintiff "state[d] she was concerned that she [could] not return to work due to worsening symptoms due to fear of falling while escorting children around the school [and] [she] complain[ed] that she [was] getting scared to drive due to dizziness yet she drove herself here." Plaintiff's reported concerns are presumably what led the provider to note in the restrictions that she should "avoid driving or returning to work" if her "dizziness returns and/or persist[s]."

would not be at work that day as her dizziness had returned and worsened.  Plaintiff forwarded a copy of the Trustcare form to Tawana Bumphis, a JPS workers' compensation specialist/executive assistant to Moore.  In addition, plaintiff called and spoke with Bumphis, who reportedly advised plaintiff she should attempt to return to work.

Plaintiff did not return to work.  On Tuesday, February 15, and again on Wednesday, February 16, she called and e-mailed the school that she would be out due to sickness.  On February 16, Principal Wilson e-mailed plaintiff, requesting an "updated/ current doctor's excuse for your absences."  Plaintiff responded, stating, "I will be going to my doctor on Saturday, February 19, 2022, and I will provide an update."  Principal Wilson replied via e-mail, stating:

> Per District policy, once an employee has missed four consecutive days for sick leave, they will need a doctor's excuse for the days they have missed.  Further, once an employee is absent four or more consecutive days, they should be referred to Risk Management for FMLA. Therefore, please contact Risk Management for FMLA.

Plaintiff e-mailed in sick the next day.  Plaintiff also e-mailed Bumphis, highlighting the driving/work restriction indicated on the Trustcare return-to-work form, and stated:

> I am writing this to inform you that unless I am accommodated, then I will not be able to return to work

until the dizziness stops.  I am not driving at this time.
Please advise of the accommodations that Jackson Public
Schools will provide me if I am supposed to be at work during
this time?"[4]

Bumphis wrote back, advising, "Employees that miss four or more
days may apply for FMLA."  The e-mail was accompanied by FMLA
paperwork, including a Notice to Employee, dated February 17,
2023, which recited,

Attached is a Certification of Health Care provider form
for the Family and [sic] Medical Leave Act.  Please have your
health care physician to complete this form.  You have 15
calendar days from the date of this letter to return the
completed and signed form to the Office of Risk Management.

The certification form similarly recited, "The employer must give
employee at least 15 calendar days to provide the certification,"
and stated that the form "must be returned by 03/03/22."

Plaintiff continued to e-mail in sick each day from Friday,
February 18, to Tuesday, February 22.  On the morning of February
22, after receiving plaintiff's e-mail, Principal Wilson e-mailed
plaintiff, quoting JPS's policy on verification of sick day usage
and directing her to "produce a doctor's statement that includes

---

4    Citing this e-mail, plaintiff asserts in her response brief
that in response to Wilson's e-mail of the previous evening, she
"contacted risk management to request FMLA," as directed by
Wilson.  In fact, however, the e-mail to Bumphis made no reference
to FMLA.  Nevertheless, she was sent FMLA paperwork the following
day.

7

an expected length of absence." Wilson wrote, "The 'return to work' submitted on February, 14, 2022, is not sufficient for your continued use of sick days/absences."

Plaintiff responded that her doctor was working on completing her FMLA paperwork, which she would send in to JPS as soon as the forms were complete. She further pointed out that despite having timely submitted the return-to-work form from Trustcare with the dizziness note/restriction, Bumphis in Risk Management had told plaintiff she needed to be at work. Plaintiff asked, "If I am supposed to be at work, how will JPS accommodate me?"

That evening, Wilson sent to plaintiff a formal letter of reprimand, reiterating that the Trustcare return-to-work form "[did] not suffice as [the] notice" required by JPS policy, and directing that plaintiff "provide proper documentation" for her absences from February 9 to February 22 "no later than February 23, at 2:00 p.m.," failing which she would be subject to disciplinary action for "neglect of duty and job abandonment."

At 9:15 a.m. on February 23, plaintiff responded, maintaining she had complied with JPS policy by providing the Trustcare return-to-work form on February 14, regarding which she wrote, "Please see and read what the doctor put in the Notes Section under Restrictions." She further stated, "My main primary care

provider is working to complete my FMLA paperwork and as soon as

she completes it, I will rapidly fax it to you." Plaintiff sent a

second e-mail at 10:59 a.m., stating that she had spoken with her

primary care provider, who would be working on her FMLA paperwork

the following day, Thursday, February 24," which paperwork, she

noted, was "not due until March 3, 2022." She pointed out again:

> The Nurse Practitioner at Trustcare ... indicated I am
> not supposed to be driving nor am I supposed to be
> working with my condition at this time in the Notes
> section of the restrictions back on February 10, 2022.
>
> I asked you can you all accommodate me at this time
> if I am to come back to work? Your response was [that
> you could accommodate the lifting restrictions indicated
> on the return-to work form as my job duties do not
> require me to lift over ten pounds].
>
> I agree I do not lift items on my job, but my
> current job duties are: Walking around my students
> and monitoring them in class; taking students to
> connect classes (music, library, counseling); moving
> up and down stairs to the cafeteria; stand and monitor
> students in the classroom and in the hallway for
> bathroom, duty, changing classes. I will also need
> transportation back and forth to work since I am not
> driving at this time. Does [JPS] have transportation
> for injured employees or will they pay for cab service,
> Uber service for my coming back and forth to work daily?
> Does Smith Elementary have wheelchairs or ramps for
> persons who are unable to move fast at this time? I am
> unable to sit in a wheelchair and move because it makes
> me dizzy. I am unable to walk for long periods of time
> because I get dizzy. Also, is there an Assistant
> available to be with me all day in the 5th grade and
> take my students back and forth, because at this time,
> I will not be able to do all the movements.

Later that day, Moore responded to plaintiff, explaining:

> The FMLA documentation is not due today.  However,
> documentation regarding your absences and use of sick
> days from 2/9/22 - 2/23/22 is overdue.  As a courtesy,
> you have been given until today, February 23, 2022, at
> 2:00 p.m. to provide a letter from a licensed doctor
> covering the days you have been absent.  As stated
> previously, the Return-to-Work documentation from
> Trustcare dated February 10, does not satisfy the
> District's policy regarding the use of sick days.

Moore wrote that plaintiff, despite having been repeatedly

requested to provide a doctor's statement for her absences that

complied with district policy, had failed to do so, and that her

"failure to report to work and adhere to District policies

regarding submitting proper documentation is abandonment of your

job responsibilities."

> Plaintiff replied, stating:

> I am not abandoning by my job responsibilities nor my
> duties.  I have not resigned.  I have not breached my
> contract.  I am not a medical personnel.  I have not
> said I am not coming back to work.  I would love to be
> at work instead of going through this process.  Please
> keep in mind I was injured and did not choose to be out
> sick.  It happened upon me.

> I had to wait to see my primary care doctor when the
> Nurse Practitioner released me on February 10, 2022.
> …  [I] have seen her and am waiting to contact her
> tomorrow.  Once I contact her on tomorrow, Thursday,
> February 24, 2022, I will ask her to provide something
> in writing for you all.

10

On February 24, at 7:22 a.m., plaintiff e-mailed requesting for "an extension for me to submit my paperwork from my primary care provider." Phillips responded that she was "submitting termination documentation for job abandonment today." Plaintiff replied that she could not be terminated without a hearing and asked that a hearing be scheduled. A termination letter was sent to plaintiff on February 24, advising that she was being terminated for job abandonment, and informing her she had five days to request a hearing, failing which termination would become effective March 1. Plaintiff requested a hearing, which was held March 2. Following the hearing, the decision to terminate her employment was upheld, and she was formally terminated effective March 6.

In the meantime, on February 24, the same day plaintiff was informed of her termination, plaintiff turned in her FMLA paperwork to the central office. The following day, February 25, she was notified that her request for FMLA leave was approved for a twelve-week period commencing February 2, 2022 and ending May 9, 2022. Three days later, however, on February 28, plaintiff was notified that her request for FMLA leave was denied. While the reason for the decision to withdraw approval of her FMLA request was not set out in the notice, De' La Mayers, JPS's Risk

Management/FMLA Specialist, testified that the sole reason for rescinding approval was that plaintiff's employment had been terminated.  Plaintiff filed the present action on June 9, 2022.

ADA/Rehabilitation Act

Plaintiff asserts claims of disability discrimination under the ADA and Rehabilitation Act based on her termination and JPS's alleged failure to accommodate her disability.[5]  The ADA prohibits an employer from discriminating on the basis of disability by, among other things, terminating a qualified individual's employment.  Moss v. Harris Cnty. Constable Precinct One, 851 F.3d 413, 417 (5th Cir. 2017).  Discrimination under the ADA also includes "failure to make 'reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability ... unless such covered entity can demonstrate that the accommodation would impose an undue hardship.'"  Feist v. La., Dep't of Justice, Off. of the Att'y Gen., 730 F.3d 450, 452 (2013) (citations omitted).  To prevail on her disability discrimination claim, plaintiff must show that "(1)

---

5    The "ADA and the Rehabilitation Act generally are interpreted *in pari materia*," and are analyzed using the same standards.  Weber v. BNSF Railway Co., 989 F.3d 320, 324 (5th Cir. 2011) (quoting Frame v. City of Arlington, 657 F.3d 215, 223 (5th Cir. 2011)).

[s]he is disabled within the meaning of the ADA, (2) [s]he is qualified and able to perform the essential functions of [her] job, and (3) [her] employer fired [her] because of [her] disability." <u>Kemp v. Holder</u>, 610 F.3d 231, 235 (5th Cir. 2010). To succeed on her failure-to-accommodate claim, plaintiff must prove that "(1) [s]he is a qualified individual with a disability; (2) the disability and its consequential limitations were known by the covered entity; and (3) the entity failed to make reasonable accommodations." <u>Ball v. LeBlanc</u>, 792 F.3d 584, 596 n.9 (5th Cir. 2015) (citation omitted).

JPS does not dispute that plaintiff suffered an adverse employment action and, at least for purposes of its motion, while it arguably insinuates, it does not directly dispute that she was disabled.  The focus of its motion is instead on the issue of whether she was qualified.  For purpose of the ADA, an individual with a disability is "qualified" if she "with or without reasonable accommodations can perform the essential functions of the employment position." <u>Turco v. Hoechst Celanese Corp.</u>, 101 F.3d 1090, 1092 (5th Cir. 1996) (citing 42 U.S.C. § 12111(8)). Thus, "[a] plaintiff can establish that [s]he is qualified by showing that either (1) [s]he could perform the essential functions of the job in spite of [her] disability, or (2) that a

13

reasonable accommodation of [her] disability would have enabled [her] to perform the essential functions of the job." Weber v. BNSF Ry. Co., 989 F.3d 320, 323–24 (5th Cir. 2021). See Cleveland v. Policy Mgmt. Systems Corp., 526 U.S. 795, 806, 119 S. Ct. 1597, 143 L. Ed. 2d 966 (1999) ("An ADA plaintiff bears the burden of proving that she is a 'qualified individual with a disability'— that is, a person 'who, with or without reasonable accommodation, can perform the essential functions' of her job.").

In the present case, plaintiff does not contend that she could have performed the essential functions of her job without any accommodation.  On the contrary, she contends that she required reasonable accommodation and that JPS, rather than provide any accommodation – or even discuss or negotiate potential accommodations – instead terminated her employment.[6]

Although an employer is required to "engage in a good faith interactive process" to identify reasonable accommodations,

---

[6]    Plaintiff argues that she has proven she was qualified because she "has a license to teach, she was hired by JPS to teach, and she is teaching still to this day."  However, despite having the knowledge/skills required to teach and a license to teach, she was "qualified" for her position only if she was actually able to perform the essential functions of that position with or without an accommodation; and she has acknowledged that she could only have performed her job with some form of accommodation.

E.E.O.C. v. Chevron Phillips Chem. Co., 570 F.3d 606, 621 (5th Cir. 2009) (citing Cutrera v. Bd. of Supervisors, 429 F.3d 108, 113 (5th Cir. 2005)), it is the plaintiff's burden to establish reasonable accommodation as an element of her prima facie case of discrimination under the ADA, § 12111(8), and plaintiff thus bears the burden of proof of reasonableness.  Riel v. Elec. Data Sys. Corp., 99 F.3d 678, 683 (5th Cir. 1996).  See also Jenkins v. Cleco Power, LLC, 487 F.3d 309, 315 (5th Cir. 2007) ("It is the plaintiff's burden to request reasonable accommodations."). Plaintiff has suggested a number of accommodations that JPS could have provided – unpaid leave, a teaching assistant, transportation to work, seated work and/or a wheelchair; it is clear, however, that none of the proposed accommodations was a reasonable accommodation that would have enabled her to perform the essential functions of her job without creating undue hardship on JPS.

Unpaid Leave:  Plaintiff contends JPS could have granted her unpaid leave as an accommodation.  As a matter of law, based on the undisputed facts, this was not a reasonable accommodation.[7]

---

[7]    The court notes at the outset that any argument by plaintiff that FMLA leave would have been a reasonable accommodation is foreclosed by the Fifth Circuit's decision in Acker v. General Motors, L.L.C., 853 F.3d 784, 791 (5th Cir. 2017), where the court made clear that "a request for FMLA leave is not a request for a reasonable accommodation under the ADA."

"[T]here is general consensus among courts, including [the Fifth Circuit], that regular work-site attendance is an essential function of most jobs." Credeur v. Louisiana Through Office of Attorney General, 860 F.3d 785, 793 (5th Cir. 2017) (citing Hypes on Behalf of Hypes v. First Commerce Corp., 134 F.3d 721, 727 (5th Cir. 1998) (per curiam) (collecting cases); E.E.O.C. v. Ford Motor Co., 782 F.3d 753, 761 (6th Cir. 2015) (en banc) ("[The] general rule [is] that, with few exceptions, 'an employee who does not come to work cannot perform any of his job functions, essential or otherwise.'" (quoting EEOC v. Yellow Freight Sys., Inc., 253 F.3d 943, 948 (7th Cir. 2001) (en banc))).

That said, in some circumstances, time off can be a reasonable accommodation.  Indeed, as plaintiff points out, "[t]he general rule ... is that unpaid medical leave may be a reasonable accommodation under the proper circumstances, such as when it is for a finite amount of time, will allow the employee to return to work and be able to perform the essential functions of his or her job and does not place an undue hardship on the employer."  8 A.L.R. Fed. 3d Ar. 2 (2016).  On this issue, the Fifth Circuit has held that "[t]ime off, whether paid or unpaid, can be a reasonable accommodation, but "an employer is not required to provide a disabled employee with indefinite leave."  Delaval v. PTech

16

Drilling Tubulars, L.L.C., 824 F.3d 476, 481–82 (5th Cir. 2016)
(emphasis added) (citing Rogers v. Int'l Marine Terminals, Inc.,
87 F.3d 755, 759–60 (5th Cir. 1996)).  See Narayanan v. Midwestern
State Univ., No. 22-11140, 2023 WL 6621676, at *4 (5th Cir. Oct.
11, 2023) (stating, "We have frequently recognized that indefinite
leave requests lacking a return date ... qualifies as an undue
hardship and does not violate ADA standards."); Rogers, 87 F.3d at
759–60 (holding that indefinite leave is not a reasonable
accommodation and stating, "[R]easonable accommodation is by its
terms most logically construed as that which presently, or in the
immediate future, enables the employee to perform the essential
functions of the job....").

Plaintiff argues that when she first inquired about an
accommodation on February 14, JPS could have granted her unpaid
leave "to give [her], her doctors, and JPS enough time to work out
some combination of treatments and reasonable accommodations that
would allow her to return to work."  She contends that it "need
not have been a long leave," and that such leave "may very well"
have enabled her prompt return to the classroom.

Plaintiff's position is wholly belied by the undisputed facts
of record.  The facts plainly show that plaintiff did not purport
to need leave as an accommodation for a finite period of time.

Moreover, nothing in the record supports her current suggestion
that a relatively short period of leave would have enabled her
return to the classroom, much less her prompt return to the
classroom.  On the contrary, plaintiff has repeatedly asserted
that at the time she sought an accommodation, neither she nor her
medical providers knew what was causing her dizziness or how long
her condition might have been expected to last.  According to
plaintiff, her primary care doctors were unable to diagnose her
condition and therefore referred her to a neurologist; but by her
own admission, at the time, she had no idea how long it would be
before she could even get in to see a neurologist and she
certainly had no idea whether any diagnosis and/or treatment the
neurologist might provide would enable her to return to work.

Plaintiff further argues that even a lengthy or indefinite
unpaid leave would not have imposed an undue hardship on JPS,
reasoning that the burden created by granting her indefinite
unpaid leave would have been no greater than the burden on JPS
from terminating her employment since in either case, JPS would
have had to find a way to cover her absence, for example, by
hiring someone to replace her or by altering student/teacher
assignments.  Of course, such reasoning could presumably be
applied to most positions, and yet the Fifth Circuit has clearly

held that employers do not violate the ADA by refusing to grant

disabled employees indefinite leave.

Transportation:  Plaintiff requested as an accommodation that

JPS provide her transportation to and from work since she was

reportedly unable to drive.  She informed JPS:

> I will also need transportation back and forth to work
> since I am not driving at this time.  Does [JPS] have
> transportation for injured employees or will they pay
> for cab service, Uber service for my coming back and forth to
> work daily?

As JPS notes, what the ADA requires is reasonable accommodations

that will enable an employee to perform the essential functions of

her job.  Driving is not an essential function of plaintiff's job.

Thus, transportation of plaintiff to and from work is not a

reasonable accommodation.  See EEOC Informal Discussion Letter,

ADA:  Reasonable Accommodation (June 20, 2001), https://www.eeoc.

gov/foia/eeoc-informal-discussion-letter-47 (last checked Nov. 9,

2023) (stating that the ADA does not require an employer to

provide assistance in getting an employee to and from work as a

form of reasonable accommodation; rather, it is the employee's

responsibility to arrange how s/he will get to and from work.").[8]

---

8    Plaintiff testified in her deposition that she did not
necessarily need JPS to provide her with transportation because
even though she was not driving, she could have managed to get to
work with the assistance of friends and family.  She argues that

Assistants:  Even had plaintiff been able to get to work
without transportation provided by JPS, once there, she would not
have been able to perform the essential functions of her job.
Based on her claim that her dizziness rendered her unable to do
"all the movements" required for her job, including taking her
students back and forth to "connect classes (music, library,
counseling)" and the cafeteria, and monitoring students in the
classroom and in the hallway for "bathroom, duty, and changing
classes," plaintiff requested that JPS assign an assistant to be
with her all day to assist with these duties.  She continues to
insist that this was a reasonable accommodation, noting assistants
are "a standard part of elementary education," and that in fact,
at Smith Elementary, assistants were assigned to each class in
grades kindergarten through fourth and that there was an assistant
in place to assist the three fifth-grade teachers.[9]

_____

JPS would have known this had JPS bothered to engage in the
interactive process with her toward finding reasonable
accommodations.  The fact is, she expressly stated that she needed
JPS to provide her with transportation to and from work.

[9]   Although not clear, it appears plaintiff may be contending
that escorting and monitoring students were not essential
functions of plaintiff's job, which was instead strictly limited
to providing classroom instruction.  If so, this position is
rejected as at odds with her own specific description of her job
duties as including these functions.  Cf. Claiborne v. Recovery
School Dist., 690 Fed. Appx. 249, 254-55 (5th Cir. 2017)
(teacher's request that she be permitted to "refrain from

Reasonable accommodations may include "job restructuring, part-time or modified work schedules, reassignment to a vacant position, acquisition or modification of equipment or devices, appropriate adjustment or modifications of examinations, training materials or policies, the provision of qualified readers or interpreters, and other similar accommodations for individuals with disabilities."  42 U.S.C. § 12111(9)(B).  However, "the ADA does not require the employer to 'relieve the employee of any essential functions of the job, modify the actual duties, or *reassign existing employees or hire new employees to perform those duties*.'"  Claiborne v. Recovery School District, 690 Fed. Appx. 249, 254-55 (5th Cir. 2017) (emphasis added) (quoting Robertson v. Neuromedical Ctr., 161 F.3d 292, 295 (5th Cir. 1998)).  Thus, assigning plaintiff a full-time assistant was not a reasonable accommodation.

Likewise, the court rejects plaintiff's related suggestion that JPS could have reassigned her to a classroom in a lower grade

---

traversing the stairs during the day would hinder her ability to escort students to and from the (first and second floor) classrooms and the (first floor) restrooms as needed" and was not a reasonable accommodation).  Thus, plaintiff's further contention that allowing her to do her job from a seated position would not have been a reasonable accommodation, as it would not have allowed her to perform the necessarily mobile functions of her job.

that already had a teaching assistant as a reasonable accommodation.  Plaintiff asserts this would have been an "elegant solution" because "the fifth grade was already fully staffed" and would have given "greater coverage to less fully-staffed grades and accommodated Phillips at the same time."  This, however, would have either required the reassignment or displacement of a teacher or required the hiring of an additional assistant, neither of which is required as a reasonable accommodation.

Wheelchair/Ramps:  In the same e-mail in which plaintiff mentioned provision of a wheelchair as a potential accommodation to facilitate her movement, she wrote that she was "unable to sit in a wheelchair and move" as it made her dizzy.  Obviously, then, a wheelchair was not a reasonable accommodation.  And while she mentioned ramps, plaintiff has never explained how ramps would have enabled her to do her job (and ramps are provided at the school in any event).

Plaintiff has identified no reasonable accommodation or combination of accommodations that would have allowed her to perform what she acknowledges as the essential functions of her job, and therefore, she has failed to create a triable issue as to whether she was qualified for her position, which is an essential element of her claims for ADA disability discrimination based on

her termination and failure to accommodate.  Accordingly, summary judgment will be granted on these claims.

ADA Retaliation

To establish a prima facie case of retaliation under the ADA/Rehabilitation Act, plaintiff muse show that (1) she engaged in an activity protected by the ADA, (2) she suffered an adverse employment action, and (3) a causal connection exists between the protected act and the adverse action.  Tabatchnik v. Continental Airlines, 262 Fed. Appx. 674, 676, 2008 WL 248595, at *2 (5th Cir. 2008).  Plaintiff contends she was terminated in retaliation for requesting that JPS provide accommodations for her disability. The Fifth Circuit has recognized that "making a request for a reasonable accommodation under the ADA may constitute engaging in a protected activity," id.; however, as plaintiff has failed to demonstrate that there was any reasonable accommodation that would have enabled her to perform the essential functions of her job, her retaliation claim fails as a matter of law.  Although plaintiff contends otherwise, the Fifth Circuit has plainly held that "a plaintiff must show he is qualified for the job in question to establish a prima facie retaliation claim under the ADA."  Moss, 851 F.3d at 420 (citing Holtzclaw v. DSC Commc'ns Corp., 255 F.3d 254, 260 (5th Cir. 2001), and Lambus v. City of

<u>Jackson Fire Dep't</u>, 54 Fed. Appx. 414, 2002 WL 31718479, at *3
(5th Cir. 2002), and concluding that plaintiff who failed to raise
a genuine issue of material fact on the question of whether he is
qualified for his job under the ADA also failed to make out a
prima facie retaliation claim under the ADA.).

 <u>FMLA Interference/Retaliation</u>

 There are two types of claims under the FMLA: (1) an
interference claim alleges the employer has burdened or denied an
employee's substantive rights under the Act and (2) a retaliation
claim alleges the employer discharged or otherwise discriminated
against the employee for invoking rights under the Act.
Plaintiff asserts both theories, alleging that in terminating her
employment, JPS interfered with her right to FMLA leave and
retaliated against her for requesting FMLA leave.  JPS argues that
the court lacks jurisdiction over any FMLA claim by plaintiff as
she has failed to plead or produce evidence that she is eligible
for coverage under the FMLA.  Contrary to JPS's position,
eligibility under the FMLA is not jurisdictional.  <u>See</u> <u>Minard v.</u>
<u>ITC Deltacom Commc'ns, Inc.</u>, 447 F.3d 352 (5th Cir. 2006) (holding
that requirement that plaintiff had been "eligible employee" "is a
substantive ingredient of a plaintiff's claim for relief, not a
jurisdictional limitation").  Moreover, while a plaintiff

asserting an FMLA claim for interference and/or retaliation is usually required to show that she was an eligible employee, i.e., that she worked 1,250 hours during the twelve months prior to the start of leave, that is not necessarily the case for full-time school teachers.[10]   Department of Labor regulations implementing the FMLA state:

> In the event an employer does not maintain an accurate record of hours worked by an employee, . . . the employer has the burden of showing that the employee has not worked the requisite hours.  An employer must be able to clearly demonstrate, for example, that full-time teachers (see § 825.102 for definition) of an elementary or secondary school system, or institution of higher education, or other educational establishment or institution (who often work outside the classroom or at their homes) did not work 1,250 hours during the previous 12 months in order to claim that the teachers are not eligible for FMLA leave.

29 C.F.R. § 825.110(c)(3).  Here, JPS states in a footnote in its reply brief that JPS teachers are required to sign in and out of

---

10   To establish a prima facie interference case under the FMLA, a plaintiff must show that (1) she was an eligible employee; (2) the defendant was an employer subject to the FMLA's requirements; (3) the plaintiff was entitled to leave; (4) the plaintiff gave proper notice of her intention to take FMLA leave; and (5) the defendant denied the plaintiff the benefits to which she was entitled under the FMLA.  Lanier v. Univ. of Tex. Sw. Med. Ctr., 527 F. App'x. 312, 316 (5th Cir. 2013).  To establish a prima facie retaliation case under the FMLA, a plaintiff must show that (1) she was protected under the FMLA; (2) she suffered an adverse employment action; and (3) the adverse employment action was taken because she sought protection under the FMLA.  Id. at 17.

school each day.  Even if JPS had pointed to evidence in support
of that assertion – and it has not -- proof merely that JPS kept
track of the hours its teachers were present at the school
building is not necessarily proof that JPS kept track of all the
hours its teachers actually worked.  The regulation specifically
recognizes that teachers often work off the clock, and yet JPS
does not purport to have accounted for such time (or a lack
thereof).  Accordingly, under the regulation, JPS has the burden
to show that plaintiff did not work the requisite hours, and this
it has not done.  In any event, plaintiff has presented an
affidavit attesting that she worked the 1,250 hours required to be
eligible for FMLA leave.

As the only basis advanced by JPS for summary judgment on
plaintiff's FMLA interference claim is her purported failure to
allege and/or present evidence of her eligibility for FMLA
coverage, its motion for summary judgment on this claim will be
denied.

JPS further argues that plaintiff cannot succeed on her
retaliation claim because plaintiff admitted under oath in
testimony at her termination hearing that she did not comply with
JPS's policy for providing leave verification and thus effectively
conceded that the reason JPS gave for terminating her employment

was true and accurate.  That is one interpretation of the
evidence.  There is another plausible interpretation which is
this:  Plaintiff was absent from work because of a serious medical
condition; she maintained to JPS consistently and repeatedly that
she was unable to return to work, even in the face of JPS's
insistence that she do so; she requested and/or was provided
paperwork to complete to request FMLA leave and informed JPS that
she was in the process of having her doctor complete paperwork for
FMLA leave; yet prior to the time when her FMLA paperwork was due
to be submitted, JPS terminated her employment.  It may be true
that throughout this time, plaintiff failed to submit to JPS a
doctor's excuse which included a return-to-work date, which is
what Principal Wilson insisted in her testimony was all she
needed.  Principal Wilson was clearly frustrated with plaintiff,
perhaps understandably.  However, there is clear evidence to
suggest that Principal Wilson and her superiors at JPS, well
before the termination decision, were well aware that plaintiff
was completing a FMLA leave request and that she did not have a
return-to-work date to provide.  Considering the totality of
circumstances disclosed by the record evidence, a jury could
reasonably find, notwithstanding plaintiff's putative admission of
her technical violation of JPS's leave verification policy, that

JPS terminated her to prevent her from taking FMLA leave and/or because she was seeking FMLA leave.  As the parties are certainly aware, the court on a summary judgment motion must view the evidence in the light most favorable to plaintiff.  So viewed, it is apparent that JPS is not entitled to summary judgment on plaintiff's FMLA claims.

State Law Claims

Plaintiff seeks relief for her termination under state law based on two theories.  The first, denominated "wrongful termination," purports to seek review, pursuant to Mississippi Code Annotated §§ 37-9-59 and 37-9-113, of JPS's termination decision on the basis that the decision was not supported by substantial evidence; was arbitrary and/or capricious; was in violation of plaintiff's federal statutory rights under the FMLA, ADA and Rehabilitation Act, and without good cause.  See Miss. Code Ann. § 37-9-59 (granting terminated employee, upon timely request, right to public hearing before school board pursuant to procedures established by § 37-9-111, and stating, "From the decision made at said hearing, any licensed employee shall be allowed an appeal to the chancery court in the same manner as appeals are authorized in Section 37-9-113.  Any party aggrieved by action of the chancery court may appeal to the Mississippi

28

Supreme Court as provided by law."). JPS submits this putative claim is barred by sovereign immunity and/or collateral estoppel. Specifically, it submits that as a political subdivision of the state, it enjoys sovereign immunity, except to the extent such immunity has been waived. It submits that there has been no such waiver. It points out that while the Mississippi Tort Claims Act (MTCA), Miss. Code Ann. § 11-46-1 et seq., has created a limited waiver of immunity, such waiver does not apply here as "the MTCA does not grant a right to recover based on a mere violation of statute or regulation." Wilcher v. Lincoln Cty. Bd. of Supers. & City of Brookhaven, Miss., 243 So. 3d 177, 184 (Miss. 2018).

Additionally and/or alternatively, JPS asserts that what plaintiff is actually doing is contesting the outcome of her due process hearing, that is, her termination by the school board, but according to JPS, plaintiff "has no recourse in this court for that claim": She did not appeal the school board's decision to the chancery court, which was the only means available to her under §§ 37-9-59 and 37-9-113 for challenging the board's decision, and consequently, her claim is barred by collateral estoppel. See LaCour v. Claiborne Cnty. Sch. Dist., 119 So. 3d 1128, 1136 (Miss. Ct. App. 2013) ("The School Board's decision stands as a final decision of the issues relating to LaCour's

termination since she failed to timely perfect her appeal in chancery court.").

Plaintiff states in response to the motion that she is not purporting to assert a cause of action against JPS for breach of the referenced statutes; rather, she is, in fact, seeking judicial review of JPS's termination decision in accordance with the procedures/standards set out in § 37-9-113.  Further, although the statute purports to grant an aggrieved employee the right to appeal to "chancery court," she maintains that her appeal, instead, to this court is permissible and within this court's supplemental jurisdiction under 28 U.S.C. § 1367(a) (stating, in pertinent part, that "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.").  It appears plaintiff is correct.  See City of Chi. v. Int'l Coll. of Surgeons, 522 U.S. 156, 169, 118 S. Ct. 523, 139 L. Ed. 2d 525 (1997) (stating, "There is nothing in the text of [28 U.S.C.] § 1367(a) that indicates an exception to supplemental jurisdiction for claims that require on-the-record review of a state or local

administrative determination."); <u>Vasquez v. Nueces Cnty., Tex.</u>, 551 F. App'x 91, 94–95 (5th Cir. 2013) (citing <u>City of Chicago</u>, 522 U.S. at 169 as "allow[ing] supplemental jurisdiction to be exercised over review of state administrative decisions," and observing that state statute which mandated appeal of decision of Texas Commission of Human Rights to specific state court was "no barrier to the exercise of supplemental jurisdiction [of such an appeal] in federal court.") (citing <u>Bradberry v. Jefferson Cnty.</u>, 732 F.3d 540, 554–55 (5th Cir. 2013)). <u>See also</u> <u>Thompkins v. Stuttgart Sch. Dist. No. 22</u>, 787 F.2d 439, 441 (8th Cir. 1986) (explaining that a state legislature cannot limit federal court jurisdiction and thus concluding that district court had jurisdiction to decide teacher's challenge to her termination under state's Teacher Fair Dismissal Act, despite provision of statute providing that exclusive remedy was appeal to a state circuit court).

The questions whether the court has supplemental jurisdiction and whether it should exercise that jurisdiction, however, are separate inquiries. <u>See</u>, <u>e.g.</u>, <u>Lacour v. Claiborne Cnty. Sch. Dist.</u>, No. 5:08CV315-DCB-JMR, 2010 WL 11527357, at *3 (S.D. Miss. Jan. 29, 2010), <u>aff'd sub nom.</u> <u>Lacour v. Kilcrease</u>, 384 F. App'x 422 (5th Cir. 2010) (declining to exercise supplemental

31

jurisdiction over plaintiff's state law claims premised on alleged violations of § 37-9-59); Owens v. Calhoun Cnty Sch. Dist., No. 3:11CV067-M-A, 2012 WL 12878171, at *4-6 (N.D. Miss. Oct. 30, 2012) (declining to exercise supplemental jurisdiction over plaintiff's claim that she was terminated without good cause and/or that her termination was arbitrary or capricious); Phillips v. N. Carolina A & T State Univ., No. 1:09CV227, 2009 WL 5215377, at *5 (M.D.N.C. Dec. 28, 2009) (declining to conduct judicial review under state statute of plaintiff teacher's termination, concluding that "it is improper for a federal district court to hear appellate reviews of state administrative decisions that are not de novo trial proceedings."). At the present time, the court declines to consider the latter issue (and hence declines to dismiss on this basis) as neither party has raised or addressed it.

Plaintiff's second state law claim is for breach of contract. JPS contends it is entitled to summary judgment because plaintiff clearly has admitted that she breached her employment contract by failing to comply with JPS's leave verification policy, such that JPS had good cause to terminate her employment and thus did not breach her employment contract by doing so. In the court's

32

opinion, however, there are genuine issues of material fact which preclude summary judgment on this claim.

## Conclusion[11]

Based on the foregoing, it is ordered that defendant's motion is granted as to plaintiff's ADA and Rehabilitation Act Claims and denied as to all other claims.

SO ORDERED this 9th day of November, 2023.


/s/ Tom S. Lee
UNITED STATES DISTRICT JUDGE

---

11   Plaintiff has pointed out that there is currently pending a motion to compel "which seeks significant additional discovery which should shed additional light on the matters at summary judgment here." She argues that the court should not resolve defendant's motion without the benefit of this additional discovery. However, the discovery at issue does not appear to relate in any potentially pertinent way to the basis for the court's determination to grant summary judgment on plaintiff's ADA and Rehabilitation Act claims and therefore, her request that the court delay ruling on the motion pending further discovery is denied.